The STATE of Ohio, Appellee,

v.

PHELPS, Appellant.

[Cite as *State v. Phelps* (1991), 75 Ohio App.3d 573.]

Court of Appeals of Ohio,
Hamilton County.

No. C–900462.

Decided Aug. 14, 1991.

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *Philip R. Cummings,* for appellee.

*Peter Rosenwald,* for appellant.

*Per Curiam.*

Defendant-appellant Benny Phelps has taken the instant appeal from his conviction on two counts of aggravated arson. On appeal, he advances two assignments of error in which he challenges the legal sufficiency and weight of the evidence adduced at trial and the jurisdiction of the trial court to sentence him.

On March 4, 1986, at approximately 6:00 a.m., the Cincinnati Fire Department responded to a dispatch regarding a fire on the eighteenth floor of the Clarion Hotel in downtown Cincinnati. The fire was extinguished within ten minutes of the firefighters' arrival, and, shortly thereafter, John Heltman, a specialist with the Fire Investigative Unit, arrived. In the lobby of the hotel, Heltman encountered firefighter Dan Mitsch. As they conversed, Mitsch observed the defendant descending to the hotel lobby on the escalator and pointed him out to Heltman as the individual who had approached him at the fire station the night before to discuss firefighting. Heltman followed the defendant out of the hotel, and, as he approached him, he observed that the defendant was carrying a police- and fire-dispatch scanner. In response to Heltman's request that he explain his presence in the hotel, the defendant

stated that he was there to help. Heltman instructed the defendant not to interfere with the firefighters and returned to the hotel.

Shortly thereafter, as Heltman was returning to his car to retrieve his investigation equipment, the defendant approached Heltman and asked if he was a suspect in the fire, if he would appear on television, or if his name or picture would be used in the newspaper. Heltman responded in the negative and resumed his investigation, which, by then, included a second fire on the fifth floor of the Clarion.

At approximately 7:00 a.m., Heltman responded to a dispatch regarding a fire at the Hyatt Regency Hotel, one block away from the Clarion. The fire alarm had been activated on the fourth floor of the Hyatt, and Heltman was directed to the men's restroom, where he found the extinguished remains of a fire ignited in two boxes of facial tissues on the marble surface of the restroom vanity. Heltman spoke with the building's engineer, who indicated that he had already spoken with a man who represented himself as a fire investigator. From the engineer's description, Heltman determined that the "fire investigator" to whom the engineer had spoken was the defendant and ordered that the defendant be apprehended. The defendant was discovered near the Clarion and was returned to the Hyatt, and, upon the engineer's identification, he was arrested for impersonating a fire investigator. In the course of his postarrest interrogation, the defendant initially denied involvement in the Clarion or the Hyatt fires, but he eventually confessed in a taped statement to setting the Hyatt fire.

The next day, Heltman spoke with a taxi driver, who stated that on the morning of the fires he arrived at the Hyatt's taxi stand at 4:30 a.m., and that at approximately 5:00 a.m. he observed an individual, whom he subsequently identified as the defendant, emerge from the Clarion, walk to the front of the Hyatt and stand watching the upper stories of the Clarion until shortly before 7:00 a.m. On March 7, the defendant was picked up for questioning by officers with the Cincinnati Police Department's Homicide–Rape Squad, who had been assigned to investigate the Clarion fires due to the possibility that injuries sustained in the eighteenth-floor fire might prove fatal. During questioning, the defendant initially denied setting the Clarion fires, but he eventually confessed to setting fires on both the fifth and the "fifteenth" floors of the Clarion and agreed to give a taped statement to that effect.

On March 13, 1986, a Hamilton County Grand Jury returned a four-count indictment charging the defendant, in counts one and two, with aggravated arson in connection with the Clarion fires and, in counts three and four, with aggravated arson in connection with the Hyatt fire. The charges were tried

to a jury in July 1986, and the jury found the defendant not guilty on counts one and two, but guilty on counts three and four.

The trial court ordered a presentence investigation and set the case for sentencing on August 14, 1986. In the interim, the defendant began to exhibit symptoms of mental illness, and the trial court ordered a psychological examination. On September 17, 1986, after reviewing the examiner's report, the trial court found that the defendant was not competent to be sentenced, but that there was a substantial probability that he would be restored to competency within one year. The court thus ordered, pursuant to R.C. 2945.38(D), the defendant's commitment to Rollman's Psychiatric Center for a period not to exceed fifteen months.

In November 1986, a second psychological evaluation was conducted, and, by entry dated December 2, 1986, the trial court again entered a finding of incompetency and committed the defendant to the Pauline Warfield Lewis Center ("Lewis Center"). Subsequent findings of incompetency were entered on June 30, 1987, December 17, 1987, and March 10, 1989, and, in each instance, the court ordered that the defendant's commitment to the Lewis Center be continued "until the defendant is restored to competency."

Finally, on May 25, 1990, following a hearing conducted pursuant to either "O.R.C. 2945.40 and 5122.15" or "O.R.C. 2945.37 *et seq.*,"[1] the trial court found that the defendant had been restored to competency and imposed upon the findings of guilty on counts three and four of the indictment concurrent sentences of confinement of six to twenty-five years.

In his first assignment of error, the defendant challenges the sufficiency of the evidence adduced at trial and the balance struck by the jury in weighing the evidence before it. Neither challenge has merit.

Upon review of the evidence presented below, we hold that reasonable minds could have reached different conclusions as to whether each element of the crimes charged had been proven beyond a reasonable doubt. See *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356. With respect to the defendant's challenge to the weight of the evidence, we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence, lost its way or created such a manifest

---

1. The record contains two entries ordering the sheriff to return the defendant for a hearing set for May 25, 1990. The first entry, dated May 10, 1990, states that the hearing was required by R.C. 2945.40, which governs the procedure upon a criminal defendant's acquittal by reason of insanity, and R.C. 5122.15, which sets forth, *inter alia*, the procedure upon judicial hospitalization of a criminal defendant. The second entry, dated May 15, 1990, states that the hearing was required by R.C. 2945.47 *et seq.*, which governs the matter of a criminal accused's competency to stand trial.

miscarriage of justice as to warrant the reversal of the defendant's convictions. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652; *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. We, therefore, overrule the defendant's first assignment of error.

■ The defendant, in his second assignment of error, challenges the trial court's jurisdiction to sentence him. We find this challenge to be well taken.

■ The trial or conviction of a criminal accused who lacks "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and * * * a rational as well as a factual understanding of the proceedings against him" constitutes a deprivation of his due-process right to a fair trial. *Drope v. Missouri* (1975), 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (citing *Pate v. Robinson* [1966], 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Dusky v. United States* [1960], 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824); *State v. Rahman* (1986), 23 Ohio St.3d 146, 23 OBR 315, 492 N.E.2d 401; *State v. Chapin* (1981), 67 Ohio St.2d 437, 21 O.O.3d 273, 424 N.E.2d 317. A state's procedures must be adequate to protect this right. *Pate, supra;* see, also, *Drope, supra; State v. Rubenstein* (1987), 40 Ohio App.3d 57, 531 N.E.2d 732.

■ Under the well-established common-law rule, a criminal accused cannot be tried, sentenced or executed while insane, and an inquiry into the accused's mental state is required if, before, during or after trial, facts brought to the attention of the trial court, either from the court's own observations or upon the suggestion of counsel, raise doubts as to the accused's sanity.[2] *McIntosh v. Pescor* (C.A.6,1949), 175 F.2d 95; *State ex rel. Townsend v. Bushong* (1945), 77 Ohio App. 464, 33 O.O. 319, 68 N.E.2d 226, affirmed (1946), 146 Ohio St. 271, 32 O.O. 289, 65 N.E.2d 407; see, also, *Drope, supra* (even if a defendant is competent at the commencement of his trial, a trial court must be alert to circumstances suggesting a change that would render the defendant unable to meet the standards of competence to stand trial).

---

**2.** The common-law prohibition has also been viewed as a "by-product of the ban against trials *in absentia*," because the defendant's Fifth Amendment right to be present at every stage of his trial is implicated when "the mentally incompetent defendant, though physically present in the courtroom, is in reality afforded no opportunity to defend himself." *Drope, supra,* 420 U.S. at 171, 95 S.Ct. at 903, 43 L.Ed.2d at 111; see, also, *Hall v. United States* (C.A. 4, 1969), 410 F.2d 653, 658, fn. 2 (an accused who is mentally incompetent at sentencing may be said to be not effectively present); *United States v. Turner* (N.D.Cal.1982), 532 F.Supp. 913 (policy considerations underlying the common-law requirement that the defendant be present at sentencing); *State v. Williams* (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323 (the due-process right to be present at every stage of trial is embodied in Crim.R. 43[A] ).

R.C. 2945.37 and 2945.38, as did their predecessors G.C. 13441–1 and 13441–2, constitute an "amplification" of the common-law rules. See *Townsend, supra,* 77 Ohio App. at 469, 33 O.O. at 321, 68 N.E.2d at 229. R.C. 2945.37(A) provides in relevant part:

"(A) In a criminal action in a court of common pleas * * * the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before trial, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after trial has begun, the court shall hold a hearing on the issue only for good cause shown." [3]

R.C. 2945.38 governs the disposition of the defendant after a competency hearing, providing in divisions (B) and (D) thereof:

"(B) If the court finds that the defendant is incompetent to stand trial, it shall also make a finding based on the evidence as to whether there is a substantial probability that the defendant will become competent to stand trial within one year, if the defendant is provided with a course of treatment.

" * * *

"(D) If the court finds that the defendant is incompetent to stand trial and it appears to the court, through a review of the report of an examiner or otherwise, that the defendant is mentally ill * * *, but that there is a substantial probability he will become competent to stand trial within one year if provided a course of treatment, and the offense is one for which the defendant could be incarcerated, if convicted, it shall order the defendant to undergo treatment at a [mental health] facility * * * or it may order private treatment by a psychiatrist or other mental health * * * professional. * * *

"No defendant shall be required to undergo treatment under this division for longer than the lesser of fifteen months or one-third of the longest minimum sentence that might be imposed for conviction of a felony * * * if the defendant is found guilty of the most serious crime with which he was charged at the time of the hearing. No order issued under this division shall remain in effect after the indictment, information, or complaint is dismissed. * * * If the maximum time during which an order of the court may be in effect expires, the court shall, within three days, conduct another hearing under section 2945.37 of the Revised Code to determine if the defendant is

---

**3.** Although the November 1, 1978, amendment to R.C. 2945.37 altered prior statutory law in this area, which had mandated a hearing on competency with no distinction as to whether the suggestion of competency was made before or after the commencement of trial, it did not alter the due-process principle underlying the statutory scheme, which prohibits the conviction of a criminal accused while legally incompetent. See *Chapin, supra,* 67 Ohio St.2d at 439, 21 O.O.3d at 275, 424 N.E.2d at 319.

competent to stand trial, but at the close of such a hearing, [if the defendant is found competent to stand trial,] a disposition shall be made under division (A) of this section or if the defendant is found incompetent to stand trial, disposition shall be made as under division (C) of this section."

R.C. 2945.38(C) provides for the filing by the trial court of "an affidavit * * * in the probate court under section 5122.11 * * * of the Revised Code alleging that the defendant is a mentally ill person subject to hospitalization by court order * * *, as defined in section * * * 5122.01 * * * of the Revised Code." The trial court may then "issue the temporary order of detention that a probate court may issue under section 5122.11 * * * of the Revised Code, to remain in effect until the probable cause or initial hearing in the probate court. Further proceedings in the probate court are then civil proceedings governed by Chapter 5122. or 5123. of the Revised Code."

The dispositional provisions of R.C. 2945.38(C) come into play in three instances:

(1) If, following the initial competency hearing, "the court finds that the defendant is incompetent to stand trial and that, even if he is provided with a course of treatment, there is not a substantial probability that he will become competent to stand trial within one year, and it appears to the court, through a review of the report of an examiner under section 2945.371 of the Revised Code or otherwise, that the defendant is mentally ill * * *." R.C. 2945.38(C).

(2) If, following a hearing held upon a report filed pursuant to R.C. 2945.38(E),[4] "the court finds the defendant is incompetent to stand trial and that there is not a substantial probability that he will become competent to stand trial within the maximum time orders may be in effect, as originally established under division (D) of this section * * *." R.C. 2945.38(F).[5]

---

**4.** R.C. 2945.38(E) provides in relevant part:

"(E) The person who supervises the treatment of a defendant ordered to undergo treatment under division (D) of this section shall file a written report with the court and send copies to the prosecutor and defense counsel at the following times:

"(1) After the first ninety days of treatment and after each one hundred eighty days of treatment thereafter;

"(2) Whenever the person believes the defendant is competent to stand trial;

"(3) Whenever the person believes that there is not a substantial probability that the defendant will become competent to stand trial;

"(4) Fourteen days before expiration of the maximum time an order issued under division (D) of this section may be in effect, as specified in that division."

**5.** R.C. 2945.38(F) provides, in the alternative, that if, following a hearing held upon a report filed pursuant to R.C. 2945.38(E), "the court finds that the defendant is incompetent to stand trial, but that there is a substantial probability he will become competent to stand trial before expiration of the time limit specified for treatment under division (D) of this section, it may modify or continue in effect orders made at a previous hearing, still subject to the

(3) "If the maximum time during which an order of the court [issued pursuant to R.C. 2945.38(D)] may be in effect expires * * * [and] the defendant is found incompetent to stand trial * * *." R.C. 2945.38(D).

An order of the court issued pursuant to R.C. 2945.38(D) expires after the defendant has undergone treatment pursuant thereto for "the lesser of fifteen months or one-third of the longest minimum sentence that might be imposed for conviction of a felony * * * if the defendant is found guilty of the most serious crime with which he was charged at the time of the hearing," or upon dismissal of the indictment. R.C. 2945.38(D). The determination of whether a defendant is competent to stand trial is a jurisdictional matter. If, under R.C. 2945.38(C), (D) or (F), the defendant is "finally found incompetent to stand trial," R.C. 2945.38(G) requires that the indictment be dismissed. *State v. Brown* (1981), 2 Ohio App.3d 400, 2 OBR 475, 442 N.E.2d 475; see, also, *State v. Williams* (Apr. 2, 1990), Clermont App. No. CA89–07–068, unreported, 1990 WL 36719.

In the proceedings below, the defendant was charged with aggravated arson. The longest minimum sentence that might be imposed for a conviction of aggravated arson as charged in the indictment is ten years. Thus, "the lesser of fifteen months or one-third of the longest minimum sentence that might be imposed" on the defendant upon a finding of guilty of aggravated arson was fifteen months. See R.C. 2945.38(D).

On September 17, 1986, the trial court found that the defendant was not competent to be sentenced, but that there was a substantial probability that he would be restored to competency within one year. The court, therefore, committed the defendant, pursuant to R.C. 2945.38(D), for psychiatric treatment for a period not to exceed fifteen months. Subsequent hearings on the defendant's competency were held in December 1986, June 1987, December 1987 and March 1989, and, in each instance, the defendant was found incompetent to be sentenced, and his commitment was continued.

The trial court's order of commitment, issued pursuant to R.C. 2945.38(D), expired in December 1987, when the defendant had, pursuant thereto, undergone psychiatric treatment for fifteen months. The court was then required to conduct a competency hearing and, upon its determination that the defendant was incompetent to be sentenced, to relinquish jurisdiction to the probate court pursuant to R.C. 2945.38(C) and to dismiss the indictment pursuant to R.C. 2945.38(G).

---

maximum time orders may be in effect, as originally established under division (D) of this section."

Counsel for the defendant, in a memorandum filed at the court's request prior to the December 1987 competency hearing, urged the court to dispose of the matter under R.C. 2945.38(C). The court, however, upon its determination at the December 1987 hearing that the defendant remained incompetent to be sentenced, continued the defendant's commitment, and his commitment continued until May 25, 1990, when, upon a determination of competency, the defendant was finally sentenced.

We hold that the trial court acted without jurisdiction in sentencing the defendant in May 1990 when the court was required under R.C. 2945.38 to relinquish jurisdiction to the probate court and to dismiss the indictment in December 1987. We, therefore, sustain the defendant's second assignment of error, reverse the judgment entered below, and remand the matter to the trial court for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

SHANNON, P.J., DOAN and KLUSMEIER, JJ., concur.