OPINION
{¶ 1} In this appeal James Stafford ("Appellant") challenges the trial court's calculation of credit for time spent in custody pending trial. Appellant also claims that his 1994 re-indictment for murder in this case should have been dismissed because he was incompetent at the time it was issued by the grand jury. Finally, Appellant complains that previous appellate counsel was ineffective for failing to file a brief in this Court on his behalf. After reviewing the record in light of the arguments set forth in Appellant's brief, this Court affirms the judgment entered by the trial court. Nevertheless, because the record reflects that Appellant's credit for time-served was calculated improperly, we have re-tallied the number of days for which Appellant should be credited and modified the judgment accordingly.
 {¶ 2} On January 5, 1992, Gilbert Singleton died during an altercation with Appellant at Appellant's home in Zanesville, Ohio. In a statement made to the Noble County Sheriff on January 6, 1992, Appellant admitted striking the victim one time in the face after the victim slapped him during an argument. Then, according to the statement, the victim fell backwards onto some old floorboards, started gasping for breath, and stopped breathing. (State's Exh. 13). An autopsy concluded that Singleton, a small, elderly gentleman with a particularly delicate constitution, succumbed to a heart attack induced by Appellant's assault. (State's Exh. 17).
 {¶ 3} Sheriff's deputies arrested Appellant and on January 21, 1992, the grand jury issued an indictment charging him with aggravated murder specifying that the murder was committed during the course of an aggravated robbery. Trial was initially set to commence on October 13, 1992. On September 10, 1992, however, the trial court directed Appellant to undergo a mental health evaluation to determine his competency to stand trial pursuant to R.C. 2945.38(D). (Judgment Entry, Sept. 10, 1992, Case No. 92-CR-1). In an order issued on November 24, 1992, the trial court concluded that Appellant was not competent and had him admitted to a hospital for restoration to competency. (Judgment Entry, Nov. 24, 1992, Case. No. 92-CR-1).
 {¶ 4} Psychiatric evaluations, prepared in connection with Appellant's competency evaluations, reflect that Appellant suffered from delusional thinking and a paranoid disorder that rendered him incapable of assisting his attorney in the preparation of his defense. (Dept. Of Mental Health Records, filed March 9, 1994). During Appellant's hospitalization for his psychiatric problems, he developed an assortment of physical ailments, including pneumonia, an intestinal blockage, gallbladder stones, and throat cancer. On February 11, 1994, the Ohio Department of Mental Health advised the trial court that Appellant's maximum time for detention under R.C. 2945.38(D)(E)(4) would expire on February 24, 1994 and Appellant was not likely to achieve sufficient competency to stand trial within that time.
 {¶ 5} Under the circumstances, the Department requested the institution of probate commitment procedures under R.C. 5122. The Department further opined that Appellant, "does not meet the criteria for maximum security hospitalization. At the present time, due to the patient's grave physical illness and constant skilled nursing care needs, we are recommending to the court that the patient be placed in an appropriate medical facility." (Dept. Of Mental Health Records, filed March 9, 1994).
 {¶ 6} Thereafter the Noble County Sheriff filed an affidavit in county probate court in accordance with R.C. 5122.02 and 5122.11 alleging that Appellant was mentally ill and constituted a substantial risk of physical harm to himself and others. (Affidavit of Mental Illness, March 9, 1994). On March 9, 1994, an order from the probate court finding that Appellant was mentally ill and subject to a 90-day hospitalization was filed with the clerk's office. On June 3, 1994, after a hearing, the probate court entered an order concluding that Appellant was still a mentally ill person subject to involuntary hospitalization and committed him to the Ohio Department of Mental Health for a two-year period as provided under R.C. 5122.15. (Judgment Entry June 3, 1994). Pursuant to R.C. 2945.38(G) the trial court dismissed the criminal indictment for murder, without prejudice. (Judgment Entry Case No. 1284, June 3, 1994).
 {¶ 7} On September 24, 1994, the grand jury re-indicted Appellant for murder in connection with Mr. Singleton's death. This indictment was not served on Appellant at the time it was issued.
 {¶ 8} On August 9, 1996, the probate court recommitted Appellant for psychiatric treatment in accordance with R.C. 5122. Ultimately, Appellant remained in civil commitment until October 21, 1998, when the probate court entered an order approving his discharge. At some point thereafter, Appellant was served with the new indictment and was then returned to the custody of the Noble County Sheriff's Department. On November 12, 1998, Appellant was arraigned on the re-indicted murder charge. The case proceeded to a jury trial on February 9, 1999. On February 10, 1999, the jury found Appellant not guilty of murder, but guilty of involuntary manslaughter. The trial court immediately sentenced Appellant to an indefinite term of five to ten years of imprisonment, assessing credit for 895 days of time-served toward that sentence.
 {¶ 9} Appellant filed a timely notice of appeal from that decision on February 18, 1999.
 {¶ 10} In his first and second assignments of error, Appellant maintains as follows:
 {¶ 11} "TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT WHEN THE TRIAL COURT FAILED TO CREDIT THE DEFENDANT FOR THE TIME HE WAS CIVILLY COMMITTED IN THIS CASE PURSUANT TO R.C. § 2945.38(I). (T.p. 151)."
 {¶ 12} "THE FAILURE TO CREDIT THE DEFENDANT WITH THE TIME HE WAS CIVILLY COMMITTED PURSUANT TO R.C. § 2945.39 CONSTITUTED PLAIN ERROR. (T.p. 152)."
 {¶ 13} Since these assignments amount to alternative bases for essentially the same claim, we will address the two together. We note here that, while Appellant refers to R.C. 2945.39 in his second assignment of error, we must assume that this reference is a typographical error, since the substance of Appellant's argument is directed at R.C. 2945.38(I). Before addressing the argument's relative merits, however, we must clarify the statutory provisions controlling Appellant's claims.
 {¶ 14} Appellant argues that he is entitled to credit for time spent in civil commitment under R.C. 2945.38. Appellee counters that under R.C. 2945.38, Appellant is not eligible for such credit. Neither side, however, appears to recognize or acknowledge the fact that Appellant's involuntary civil commitment was imposed, not under R.C. 2945.38, but pursuant to R.C. 5122. As discussed below, since there is no provision entitling a prisoner to credit for time spent in civil commitment under R.C. 5122, no court has authority to assess it. Nevertheless, Appellant is entitled to credit for all of the time he spent hospitalized under the auspices of R.C. 2945.38. Our review of the record reflects that the trial court's assessment of such credit is slightly inaccurate. Accordingly, this Court has recalculated the number of days to accurately reflect Appellant's credit for time served.
 {¶ 15} This Court's resolution of this issue turns on the operation of two statutory provisions as they existed prior to 1996. The first, addressing the disposition of an accused in a criminal case in the event of a competency hearing, is set forth under R.C. 2945.38, and provides in relevant part as follows:
 {¶ 16} "A) * * *
 {¶ 17} "B) If the court finds that the defendant is incompetent to stand trial, it shall also make a finding based on the evidence as to whether there is a substantial probability that the defendant will become competent to stand trial within one year, if the defendant is provided with a course of treatment.
 {¶ 18} "C) If the court finds that the defendant is incompetent to stand trial and that, even if he is provided with a course of treatment, there is not a substantial probability that he will become competent to stand trial within one year, and it appears to the court, through a review of the report of an examiner under section 2945.371 of the Revised Code or otherwise, that the defendant is mentally ill or mentally retarded, the court may cause an affidavit to be filed in the probate court under section 5122.11 or 5123.71 of the Revised Code alleging that the defendant is a mentally ill person subject to hospitalization by court order or a mentally retarded person subject to institutionalization by court order, as defined in sections 5122.01 and 5123.01 of the Revised Code. When the affidavit is filed, the trial court shall send to the probate court a copy of all written reports of the defendant's mental condition that were prepared pursuant to section 2945.371
of the Revised Code.
 {¶ 19} "The Court may issue the temporary order of detention that a probate court may issue under section 5122.11 and 5123.71 of the Revised Code, to remain in effect until the probable cause or initial hearing in the probate court. Further proceedings in the probate court are then civil proceedings governed by Chapter 5122 or 5123 of the Revised Code * * *.
 {¶ 20} "(D) If the court finds that the defendant is incompetent to stand trial and it appears to the court, through a review of the report of an examiner or otherwise, that the defendant is mentally ill or mentally retarded, but that there is a substantial probability he will become competent to stand trial within one year if provided a course of treatment, and the offense is one for which the defendant could be incarcerated, if convicted, it shall order the defendant to undergo treatment at a facility operated by the department of mental health or the department of mental retardation and developmental disabilities. * * * The order may restrict the defendant's freedom of movement, as the court considers necessary * * *.
 {¶ 21} "No defendant shall be required to undergo treatment under this division for longer than the lesser of fifteen months or one-third of the longest minimum sentence that might be imposed for conviction of a felony or one-third of the longest maximum sentence that might be imposed for conviction of a misdemeanor if the defendant is found guilty of the most serious crime with which he was charged at the time of the hearing. No order issued under this division shall remain in effect after the indictment, information or complaint is dismissed. * * * If the maximum time during which an order of the court may be in effect expires, the court shall, within three days, conduct another hearing under section 2945.37 of the Revised Code to determine if the defendant is competent to stand trial, disposition shall be made as under division (C) of this section. * * *."
 {¶ 22} In other words, if, at the end of the treatment period under this section, the defendant is still not competent to stand trial, then the court must dismiss the charges against the defendant and either release him or institute civil commitment proceedings against him in the probate court pursuant to R.C. 5122. See Jackson v. Indiana (1972), 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (Indiana statute permitting the indefinite commitment of defendants found incompetent to stand trial was unconstitutional. "At the least," the court held, "due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Id. at 738).
 {¶ 23} R.C. 5122 provides for the civil commitment, both voluntary and involuntary, of the mentally ill. As a review of this record in its entirety makes clear, Appellant's four-year confinement, beginning on March 8, 1994, and continuing until October 21, 1998, was instituted under R.C. 5122, not R.C. 2945.38 as both parties propose. (See, In theMatter of: James R. Stafford, Probate Court Case No. 1284).
 {¶ 24} R.C. 5122.01(B) provides for the involuntary hospitalization of a mentally ill person where, because of his illness, he:
 {¶ 25} "(1) Represents a substantial risk of physical harm to himself as manifested by evidence of threats of, or attempts at, suicide or serious self-inflicted bodily harm;
 {¶ 26} "(2) Represents a substantial risk of physical harm to others as manifested by evidence of recent homicidal or other violent behavior, evidence of recent threats that place another in reasonable fear of violent behavior and serious physical harm, or other evidence of present dangerousness;
 {¶ 27} "(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or
 {¶ 28} "(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."
 {¶ 29} R.C. 5122.11 provides for involuntary hospitalization and temporary detention of an individual where an affidavit is filed with the probate court alleging, "concrete facts," based on reliable information or by actual knowledge, that the subject is both mentally ill and represents a substantial risk of physical harm to himself or those around him. In reMiller (1992), 63 Ohio St.3d 99, 112, 585 N.E.2d 396. If, after reviewing the affidavit, the court concludes that the subject is a mentally ill person subject to hospitalization, then the court may issue an order temporarily detaining the subject pending a full hearing under R.C.5122.15.
 {¶ 30} Involuntary civil commitment constitutes a significant deprivation of liberty requiring due process protection. Addington v.Texas (1979), 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323. Chapter 5122 sets forth specific procedures to be followed when a person is committed to a mental hospital, whether voluntarily or involuntarily. When commitment is against a person's will, strict adherence to these due process protections is critical.
 {¶ 31} When it enacted R.C. 5122, the legislature intended, "to make hospitalization of the mentally ill by court commitment a difficult and complex procedure, to be used only as a last resort when all other means of getting the individual's illness treated had been exhausted * * *." In re Ricks (Nov. 10, 1983), 3rd Dist. No. 1-82-35, at *3; quoting, In re Leitner, Mentally Ill (1961), 87 Ohio Law Abs. 467.
 {¶ 32} Chapter 5122 contemplates a multistage approach for civil commitment. Initially, the statute allows for emergency hospitalization pursuant to the guidelines in R.C. § 5122.10. Next, it may be necessary to pursue non-emergency hospitalization in accordance with R.C. 5122.11. Each procedure provides the individual against whom the commitment is sought with a host of due process protections.
 {¶ 33} Proceedings governed by R.C. 5122.15 provide for a full hearing, the appointment of counsel and extensive discovery. Further, the obligation is on the state to prove by clear and convincing evidence that the respondent is a mentally ill person subject to continued hospitalization. Finally, in the event the probate court concludes that the respondent is subject to civil commitment, it must then ascertain the least restrictive place for such a confinement given the patient's diagnosis, preference and projected treatment plan. See, In re CivilCommitment Proceedings under O.R.C. Chapter 5122 (Jan. 24, 2001), 7th Dist. No. 98 CA 238, at *3; and State v. Williams (Dec. 21, 1999), 7th Dist. No. 98-CA-1.
 {¶ 34} A comparison of R.C. 5122 and 2945.38 reveals that they are distinct in nature, scope and in the goals they serve. Civil commitment proceedings under R.C. 5122 seek to treat certain categories of mentally ill people. R.C. 2945, in contrast, sets forth the necessary framework for ascertaining the competency of a defendant charged in a criminal case. The parties have apparently overlooked this noteworthy distinction.
 {¶ 35} Appellee directs this Court to R.C. 2945.38(I), which provides that,
 {¶ 36} "A defendant convicted of a crime and sentenced to a jail or workhouse shall have his sentence reduced by the total number of days he is confined for examination to determine his competence to stand trial or treatment under this section and sections 2945.37 and 2945.371 of the Revised Code."
 {¶ 37} According to Appellee, the quoted section precludes Appellant from receiving credit. Appellee notes first that Appellant was not sentenced to a jail or workhouse, he was sent to prison as a convicted felon. Second, Appellee observes that Appellant was not confined for purposes of being restored to competency but was civilly committed. Therefore, Appellee contends, Appellant cannot receive the credit he seeks.
 {¶ 38} Although Appellee's analysis is flawed, Appellee is correct that Appellant cannot receive credit for the period of his civil commitment, which began on March 9, 1994, and continued until October 21, 1998. First, R.C. 2945 is silent as to crediting civil commitment time under R.C. 5122 against any sentence subsequently imposed. Appellant's commitment, imposed in accordance with R.C. 5122, was prompted by considerations that were entirely distinct from the criminal case for which Appellant was convicted and sentenced. It has been long recognized that, "a defendant is not entitled to jail time credit for any period of incarceration which arose from facts separate and apart from those on which his current sentence is based." State v. Smith (1992),71 Ohio App.3d 302, 304, 593 N.E.2d 402; and see accord, State v.Marcum, 5th Dist. No. 01-COA-01411, 2002-Ohio-101 (no credit for confinement on unrelated charges).
 {¶ 39} Furthermore, the probate court's order reflecting Appellant's civil commitment under R.C. 5122 was deemed final and appealable. Appellant had an opportunity to challenge the court's decision to civilly commit him, but chose to forego that right. Accordingly, in the absence of any statutory provision allowing for credit under such circumstances, this Court has no authority to grant Appellant's request.
 {¶ 40} Neither of the parties to this dispute, however, properly assessed the number of days that passed between Appellant's arrest and the time of trial. Appellant calculates his time in custody prior to trial as follows:
 {¶ 41} "From January 6, 1992 until March 8, 1994 he was held in the Noble County Jail, awaiting trial for capital murder. That is a total of 61 days. Mr. Stafford was civilly committed from March 8, 1994 until his release on October 30, 1998. This calculation totals 1,695 days. Finally, Mr. Stafford was held upon his release from the mental institution from October 30, 1998 until he was sentenced in the present case on February 10, 1999. This totals 103 days. Therefore, Mr. Stafford was confined for 1,859 days prior to his sentencing." (Appellant's Brf. pp. 2-3, emphasis added).
 {¶ 42} Obviously, the period of time that elapsed between January of 1992 and March of 1994, more than two years, exceeds 61 days.
 {¶ 43} Appellee's calculation, though closer to the mark, also misses a number of days for which Appellant should receive credit. According to Appellee, Appellant's pretrial custodial time should be calculated as follows:
 {¶ 44} "At sentencing, Appellant received credit for 895 days already served prior to trial. January 6, 1992 (date of arrest) through March 4, 1994 (when Appellant was found to be mentally ill subject to hospitalization by court order, not restorable, original indictment was dismissed, and case transferred to probate jurisdiction) amounts to 789 days. From October 30, 1998 (date of release from commitment) to February 10, 1999 (date of conviction) equals 104 days. Combining these totals yields 893 days credit for time served, 2 days short of that allotted to Appellant at sentencing." (Appellee's Brf. p. 4, emphasis added).
 {¶ 45} The trial court, which essentially adopted Appellee's calculation method, counted the number of days, "served subsequent to arrest and prior to this date of sentencing," at 895. (Feb. 10, 1999, Journal Entry, p. 2). In fact, actual number of days that passed between Appellant's arrest on January 6, 1992, and his civil commitment was 793 days. The record reflects that the order memorializing the commitment decision was filed with the clerk's office on March 9, 1994. The order regarding Appellant's discharge from civil commitment was entered on October 21, 1998. The number of days that elapsed from October 21, 1998 and Appellant's sentencing on February 10, 1999, is 113. Therefore, the total number of days for which Appellant should have received time-served credit is 906.
 {¶ 46} There are three sections of the Revised Code that govern the proper credit to assess for time spent in confinement prior to sentencing. Those sections are R.C. 2967.191, 2949.08(C), and 2949.12. Viewed in pari materia, they require the trial court to credit the above time. State v. McComb (June 25, 1999), 2nd Dist. No. 99 CA 8, at *6. It is the trial court's responsibility to properly calculate the amount of days for which such credit may be extended. State v. Carroll, 5th Dist. No. 01 CA 48, 2002-Ohio-764; citing, State ex rel. Corder v. Wilson
(1991), 68 Ohio App.3d 567. Since the provisions are mandatory, the trial court's failure to properly calculate such credit is plain error. SeeState v. Hawkins (April 9, 1999), 2nd Dist. No. 98 CA 6 at *7; and Statev. Hinzman (June 18, 1986), 8th Dist. Nos. 50829, 50830 at *5.
 {¶ 47} R.C. 2967.191 mandates that the department of rehabilitation and corrections reduce a prisoner's sentence and eligibility for parole (where applicable) in the following manner:
 {¶ 48} "[B]y the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, and confinement while awaiting transportation to the place where the prisoner is to serve [his] prison term."
 {¶ 49} The term "confinement" is defined in R.C. 2945.08(C), which states in pertinent part as follows:
 {¶ 50} "The jailer, administrator, or keeper in charge of a jail or workhouse shall reduce the sentence of a person delivered into his custody * * * by the total number of days the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine his competence to stand trial or to determine sanity, and confinement while awaiting transportation to the place where he is to serve his sentence."
 {¶ 51} The term "confinement" has been liberally construed to encompass a wide range of situations and facilities. State v. James
(1995), 106 Ohio App.3d 686, 666 N.E.2d 1185; and State v. Fattah (Nov. 13, 2000), 12th Dist. No. CA2000-03-050. Accordingly, the Ohio Supreme Court held that a community-based corrections facility that allowed substantial freedom of movement was sufficiently restrictive to constitute "confinement" warranting credit for time served under R.C. § 2945.08(C). See, State v. Napier (2001), 93 Ohio St.3d 646,2001-Ohio-1890, 758 N.E.2d 1127; and State v. Snowder (1999),87 Ohio St.3d 335, 720 N.E.2d 909.
 {¶ 52} The third statutory provision pertinent to the instant analysis is R.C. 2949.12. That section, addressing the calculation of time, conveyance, and incarceration assignments of convicted felons, states that the prisoner's sentencing order should also reflect, "* * * pursuant to section 2967.191 of the Revised Code * * * the total number of days, if any, that the felon was confined for any reason prior to conviction and sentence." R.C. 2949.12 (emphasis added). When R.C.2967.191 is read in light of the broad language highlighted in R.C.2949.12, Appellant is entitled to credit for all of his pretrial confinement except that spent in civil commitment under R.C. 5122.
 {¶ 53} Accordingly, this Court modifies the judgment entered by the trial court on February 10, 1999, to reflect that Appellant is entitled to credit for the 906 days he served subsequent to his arrest and prior to sentencing.
 {¶ 54} In his third and fourth assignments of error, Appellant contends that,
 {¶ 55} "THE DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL AND STATUTORY RIGHTS TO AN INDICTMENT WHEN HE WAS INDICTED PRIOR TO BEING RESTORED TO COMPETENCY. (Indictment, 9/21/94)."
 {¶ 56} "TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO THE INDICTMENT OF DEFENDANT PRIOR TO DEFENDANT BEING RESTORED TO COMPETENCY. (T.p. 35)."
 {¶ 57} Again, these are alternative grounds for the same assignment of error and will be addressed at the same time. While technically Appellant is correct that the state should have waited until Appellant was released from civil commitment before seeking to re-indict him on the murder charge, such a failure does not provide grounds for reversal in this matter. A review of the record indicates that the state's failure to delay re-indictment until after Appellant's discharge from civil commitment had absolutely no impact on the fairness of the proceedings that led to Appellant's conviction. Therefore, Appellant is not entitled to the relief he seeks.
 {¶ 58} There is no question that pursuant to R.C. 2945.38(H), when a defendant has been found incompetent to stand trial, the indictment against him must be dismissed and further criminal proceedings are barred until such time as the accused has been released from involuntary confinement. State v. Redfeairn (Sept. 12, 1983), 2nd Dist. No. CA 7371 at *5.
 {¶ 59} The Supreme Court has observed that, "[c]ompetence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so. [citation omitted]."Cooper v. Oklahoma (1996), 517 U.S. 348, 354, 116 S.Ct. 1373,134 L.Ed.2d 498; quoting, Riggins v. Nevada (1992), 504 U.S. 127, 139-140,112 S.Ct. 1810, 118 L.Ed.2d 479 (Kennedy, opinion concurring in judgment).
 {¶ 60} To support his contention that the re-indictment should have been dismissed, Appellant relies on Redfeairn, supra, where the court found that convening a grand jury investigation prior to the defendant's discharge from civil commitment constituted a "criminal proceeding," barred under R.C. 2945.38(H). Consequently, according to the court, any indictment resulting from that grand jury proceeding was invalid. Specifically, the court noted as follows:
 {¶ 61} "Numerous courts have held that the grand jury process is a criminal proceeding. Words and Phrases, Vol. 10A, Criminal Proceeding (1968 
Supp. 1982) and cases reported therein. In the case at hand, the relevant grand jury process was initiated on September 8, 1980, one month prior to the date of the appellant's release as indicated by said judgment entry. In any event, when the appellant was arrested on October 8, 1980 and served with the indictment, nothing in the record below, including the judgment entry by the Probate Court, would indicate that the appellant had indeed been discharged from his hospitalization." Id. at *7.
 {¶ 62} The court revisited its decision in a later proceeding, again concluding that the prosecution had violated R.C. 2945.38(H). As a consequence, the court remanded the matter, "for further proceedings according to law." See, State v. Redfearin (Sept. 24, 1984), 2nd Dist. No. 7371 at *8. (Note that while these two cases involve the same individual, his name has been spelled differently in each.)
 {¶ 63} The Redfearin/Redfeairn case implicitly reflects the principle that subjecting an incompetent defendant to a criminal trial offends due process. Cooper, supra at 354; citing, Medina v. California
(1992), 505 U.S. 437, 120 L.Ed.2d 353, 112 S.Ct. 2572; Drope v.Missouri, supra; and Pate v. Robinson (1966), 383 U.S. 375,86 S.Ct. 836, 15 L.Ed.2d 815. Nevertheless, the premise for the Second District's decision, that a grand jury investigation is a "criminal proceeding" for purposes of barring further action under, R.C. 2945.38(H), is not supported by any legal authority. The decision in Redfeairn casually directs us to Words and Phrases and "cases cited therein" as justification for such a conclusion. Upon examination of that source, however, we note that while most of the cases to which the annotation refers do stand for the proposition that grand jury proceedings are generally "criminal proceedings," none of them involve an application of R.C. 2945.38 or originate in the State of Ohio. See e.g., State v.Carroll (1973), 83 Wn.2d 109, 515 P.2d 1299 (court found that grand jury proceedings could be characterized as criminal proceedings for purposes of implicating Fifth Amendment privileges and immunity provisions); andSensi v. Commonwealth (1983), 73 Pa.Cmwlth. 363, 458 A.2d 638 (court broadly construed the term "criminal proceeding" to include all actions for enforcement of penal laws, including any ordinances that may providefor imprisonment); and In re Thompson (D.C.N.Y. 1963), 213 F. Supp. 372
(grand jury is criminal proceeding implicating statute authorizing the issuance of subpoenas to compel the presence of witnesses before grand jury). Such cases have no application whatsoever to the circumstances presented in the instant case.
 {¶ 64} The facts presented in this case are similar in critical respects to those in State v. Stanley (1997), 121 Ohio App.3d 673,700 N.E.2d 881. There, a defendant charged with murder was later found to be incompetent and was eventually civilly committed. The state dismissed the indictment, then re-indicted. A subsequent competency hearing determined that the defendant was competent, the matter proceeded to trial and the defendant was convicted. As in the instant case, the defendant complained on appeal that the re-indictment was improper because the state did not first demonstrate that appellant met the criteria under R.C. 2945.38(H). In affirming his conviction, the reviewing court concluded that the re-indictment was not improper given that in later hearings, the defendant was repeatedly found to be competent to stand trial. The court also noted that, not unlike the instant case, the defendant was present for his arraignment and the record contains no indication that appellant was not competent to stand trial in the proceedings that followed. Id. at 684.
 {¶ 65} The history of the instant case reflects that on March 8, 1994, the trial court concluded that Appellant, once found incompetent to stand trial, remained incompetent and was probably not going to be restored to competency. The trial court then dismissed the indictment in Case No. 92-CR-12 and referred the matter to the probate court.
 {¶ 66} On March 9, 1994, in Case No. 1284, the probate court issued an order hospitalizing Appellant for 90 days. On June 3, 1994, on an application for continued commitment pursuant to R.C. 5122.15(H), the probate court entered a final and appealable order civilly committing Appellant for two years.
 {¶ 67} On September 21 of that same year, the grand jury re-indicted Appellant in connection with the January 5, 1992, death of Gilbert Singleton. This time, the indictment charged Appellant only with murder as that crime is set forth under R.C. § 2903.02(A), omitting any aggravating circumstances or specifications. An application seeking Appellant's continued civil commitment under R.C. 5122.15(H) was granted on August 13, 1996, and Appellant remained hospitalized until his release on October 21, 1998. The probate court found him subject to discharge, noted his pending indictment and after notifying the prosecution of its intent to do so, released Appellant from civil commitment to the custody of the Noble County Sheriff.
 {¶ 68} On November 18, 1998, Appellant was arraigned on the new murder charge in Case No. 98-2028. Appellant was present and, by all accounts, competent at that proceeding and every stage of the proceedings that followed until his conviction and sentencing on February 10, 1999.
 {¶ 69} In questioning the wisdom of the Redfearin decision, we are not questioning the well-established notion that a person accused of a crime cannot be tried, sentenced or executed while insane or incompetent. See e.g. Ford v. Wainwright (1986) 477 U.S. 399, 408,106 S.Ct. 2595, 91 L.Ed.2d 335 ("We know of virtually no authority condoning the execution of the insane at English common law."). In State v. Phelps
(1991), 75 Ohio App.3d 573, 600 N.E.2d 329, the court likened this principle to the general prohibition against trials in absentia. Id. at 577. Embodied in Crim.R. 43(A), a defendant has a fundamental right to be present at all critical stages of his criminal trial. State v. Hill
(1995), 73 Ohio St.3d 433, 444, 653 N.E.2d 271; citing, Crim.R. 43. Crim.R. 43(A) provides that, "the defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, * * *." The court in Phelps correctly noted that where a defendant is present for a proceeding but is mentally incompetent at the time, his physical presence is a nullity. Id.
 {¶ 70} In this case, Appellant was physically and mentally present in court at all critical stages of the proceedings following his re-indictment. Crim.R. 43(A) does not characterize a grand jury investigation as a critical stage in the proceedings requiring the defendant's presence. To the contrary, the accused has no right to appear before a grand jury, either personally or through counsel. JointAnti-Fascist Refugee Committee v. McGrath (1950), 341 U.S. 123, 203,71 S.Ct. 624, 95 L.Ed. 817; and State v. Ogletree (August 14, 1986), 2nd Dist. No. 9768.
 {¶ 71} Moreover, grand jury proceedings are generally conducted in secret. State v. Coley (2001), 93 Ohio St.3d 253, 754 N.E.2d 1129; and Crim.R. 6(E). Accordingly, the fact that Appellant may not have been competent during the grand jury investigation that led to his re-indictment appears to have no meaningful constitutional implications in this case. Certainly, there has been no showing that Appellant suffered prejudice because of the state's failure to delay the grand jury's investigation until his return to competency.
 {¶ 72} At oral argument, Appellant maintained that the state's failure to wait until his discharge from civil commitment before seeking his re-indictment for murder essentially divested the trial court of subject matter jurisdiction over his case, rendering any subsequent proceedings, including Appellant's trial and conviction for involuntary manslaughter, void ab initio.
 {¶ 73} This Court cannot agree with Appellant's premise. Moreover, Appellant offered no authority to support such a notion and our research suggests that there is no such authority. It is notable that the Ohio Supreme Court has held that challenges to the validity or sufficiency of an indictment are non-jurisdictional. State ex rel.Jackson v. Callahan (1999), 86 Ohio St.3d 73, 711 N.E.2d 686. Accordingly, Appellant's jurisdictional claim here, based on the timing of the indictment, appears dubious at best.
 {¶ 74} Jurisdiction, broadly defined, is the, "right and power to interpret and apply the law". The American Heritage Dictionary, Second College Edition (1982), 694. Subject matter jurisdiction focuses on the court as a forum and on the case as one of a class of cases, not on the particular facts of a certain case or the particular tribunal. In the criminal context, such an inquiry centers on the proper forum to hear the type of case in question, i.e., municipal, common pleas; court of general jurisdiction or juvenile court, or whether there is a proper forum at all. State v. Garretson (2000), 140 Ohio App.3d 554, 558, 748 N.E.2d 560; citing State v. Nelson (1977), 51 Ohio App.2d 31, 365 N.E.2d 1268; andState v. Wilson, 73 Ohio St.3d 40, 652 N.E.2d 196.
 {¶ 75} Broadly defined, subject matter jurisdiction involves a court's power to hear and decide a case on the merits. State v.Grinnell, (1996), 112 Ohio App.3d 124, 135, 678 N.E.2d 231. Subject matter jurisdiction in criminal cases is set forth under R.C. 2931.03, and provides that,
 {¶ 76} "The court of common pleas has original jurisdiction of all crimes and offenses, except in cases of minor offenses the exclusive jurisdiction of which is vested in courts inferior to the court of common pleas."
 {¶ 77} The above section plainly vests the court of common pleas with jurisdiction over serious criminal cases. Thus, our review of this record and the governing authority demonstrates that despite the state's premature decision to re-indict Appellant in this case, this decision in no way affects the trial court's jurisdiction over the matter.
 {¶ 78} Appellant alternatively maintains that counsel was ineffective for failing to seek the re-indictment's dismissal based on the fact that the grand jury issued it before Appellant was restored to competency. The scope of this Court's review of an ineffective assistance of counsel claim is governed by that set forth in Strickland v.Washington (1984), 466 U.S. 668. Under Strickland, the defendant must show that counsel's representation fell below an objective standard of reasonableness; whether, under prevailing professional norms, counsel's performance was reasonable under the circumstances. Id. at 688. Judicial scrutiny of trial counsel's performance is highly deferential. State v.Bradley, 42 Ohio St.3d 136, 142, 538 N.E.2d 373.
 {¶ 79} Moreover, to prevail on a claim challenging counsel's effectiveness, the defendant must also demonstrate that, but for counsel's unprofessional error, the result of the proceeding would have been different. Accordingly, even if trial counsel had erred in failing to seek the re-indictment's dismissal under R.C. 2945.38(H), if the results of such a failure were not prejudicial to Appellant, then counsel's performance was not ineffective.
 {¶ 80} As noted above, Appellant was present and competent for all proceedings following his discharge from civil commitment in October of 1999. Although Appellant was subject to involuntary civil commitment when the indictment was issued, the record reflects that Appellant's arraignment on the charges was delayed until after he had attained competency. Since Appellant remained competent at all critical stages of the proceedings in the trial court, it would appear that any lapse on counsel's part, even assuming there was such a lapse, was harmless. Appellant's third and fourth assignments of error are therefore overruled.
 {¶ 81} In his fifth and final assignment of error Appellant argues as follows:
 {¶ 82} "MR. STAFFORD WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ON HIS PREVIOUS APPEAL. (Journal Entry, May 2, 2001)."
 {¶ 83} Appellant proposes this challenge under App.R. 26(B)(7), which states in relevant part as follows:
 {¶ 84} "If the application (to reopen the appeal) is granted, the case shall proceed as on an initial appeal in accordance with these rules except that the court may limit its review to those assignments of error and arguments not previously considered * * * The parties shall address in their briefs the claim that representation by prior appellate counsel was deficient and that the applicant was prejudiced by that deficiency."
 {¶ 85} This Court's judgment entry of May 2, 2001, reinstating the appeal and appointing the State Public Defender as replacement counsel, cured any prejudice that may have resulted from original counsel's failure to pursue the appeal. Under the circumstances, Appellant's fifth assignment of error is meritless.
 {¶ 86} Inasmuch as we must overrule Appellant's five assignments of error, this Court hereby affirms the judgment entered by the Noble County Court of Common Pleas, but modifies that order to reflect that Appellant is entitled to credit for 906 days time served.
Donofrio, J., concurs.
DeGenaro, J., concurs.